UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br>v.<br><br>JUSTIN R. MOEDE,<br><br>                        Defendant. | Case No. 12-CR-40-JPS<br><br><br><br>ORDER |

        This matter comes before the Court for review of the defendant Justin Moede's objections to a recommendation issued by Magistrate Judge Aaron Goodstein on the defendant's motion to suppress. (Docket #16). By way of background, Moede stands charged with being a felon in possession of a firearm, after the police found him carrying a weapon. (Docket #1). With the benefit of counsel, Moede timely filed a motion to suppress the firearm, alleging that the police engaged in an unreasonable search in finding the gun, and requested an evidentiary hearing. (Docket #10). Magistrate Goodstein held that hearing on April 3, 2012. (*See* Docket #19). Then, on April 5, 2012, the magistrate issued his report and recommendation to this Court that it find that the police officers' search of Moede was not unreasonable, and thus determine that Moede's motion be denied. (Docket #16). Moede objected to the magistrate's recommendation, and the matter is now before this Court. (Docket #20). In objecting, Moede submitted a brief outlining his objections to Magistrate Goodstein's report and recommendation. (Docket #20). In an effort to be fully apprised of the parties' arguments, the Court requested that the government submit a short brief in response to the defendant's objections. (Docket #21). Instead of submitting a brief though, the government opted to rely on Judge Goodstein's report and recommendation.

(Docket #22). Moede then filed a reply brief, outlining several further objections to the magistrate's recommendation. (Docket #23). With the benefit of the parties' submissions the court now turns to the merits of the defendant's objections

1. STANDARD OF REVIEW

Instead of turning immediately to the facts of this case, the Court first recalls its standard of review when examining a magistrate judge's evidentiary recommendations. In such a case, the Court is obliged to review the recommendations of the magistrate *de novo.* 28 U.S.C. § 636(b)(1)(C). Thus, the Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* In other words, the Court's *de novo* review of Magistrate Goodstein's findings and recommendation is not limited to his legal analysis alone; rather, the Court may also review his factual findings, and accept, reject, or modify those findings as it sees fit based upon the evidence. *Id.*

2. BACKGROUND

The events in question occurred on the night of November 26, 2011. (Rept. and Rec. 2). That night, at approximately 8:15 p.m., police officers Raymond Brock and Gregory Borst heard another police squad be dispatched in response to a 911 call about a robbery that had just occurred at the corner of Hayes Avenue and either South 11th Street or South 12th Street. (Rept. and Rec. 2). Officers Brock and Borst decided to assist in response to the 911 call, and did so by driving to the area of the crime to attempt to locate the robber. (Rept. and Rec. 2).

Officers Brock and Borst were aware, from an examination of the computer-aided dispatch report (CAD) regarding the incident, that the suspect had been described as an Hispanic male wearing a black hooded

sweatshirt, black baseball cap, and blue jeans. (Rept. and Rec. 2). Thus, the officers traveled to the neighborhood of the crime and began to drive through the residential area looking for individuals who matched that description. (Rept. and Rec. 2).

At 8:22 p.m., the officers saw a group of four individuals walking east along Harrison Street, approximately four to five blocks from the reported robbery. (Rept. and Rec. 2). The officers noticed that the male members of the group wore hooded sweatshirts with their hoods up and that at least one of the males appeared Hispanic. (Rept. and Rec. 2). Because of the similarity of the male individuals' appearances to the description in the CAD report, Officers Brock and Borst made a U-turn to follow the group eastbound. (Rept. and Rec. 2–3). After following the group for a very short time, the officers swerved across the westbound lanes of traffic and pulled their squad car to the northern curb.[1] (Rept. and Rec. 2-3). Officer Brock then rolled down his window and asked the male members of the group to lower their hoods. (Rept. and Rec. 3).

When the male individuals lowered their hoods, Officer Brock was able to see that Moede was wearing a black baseball cap, similar to the description of the robber. (Rept. and Rec. 3). Seeing that Moede was wearing a black baseball cap, the officers got out of their squad car to approach the group. (Rept. and Rec. 3).

At the time the officers exited their car, Officer Brock made a statement to the group, essentially asking the group to stop for a moment so

---

[1]Though Moede argues that the police officers effectively blocked the group's path forward after the officers pulled their car to the northern curb (Def.'s Obj. 3 (citing Tr. 79), the Court has reviewed the transcript of the magistrates's hearing and has found no statement that indicates that Moede's group was unable to proceed forward after the police car pulled to the northern curb. (Tr. 77–83).

that he could ask the group some questions. (Rept. and Rec. 3). Though there is some disagreement as to what Officer Brock actually said, it is clear that he—at the very least—implied that the group should stop. (Rept. and Rec. 3). At the evidentiary hearing, Officer Brock testified that he said something to the effect of, "Hey, can I talk to you guys for a second?" (Tr. 12). Officer Brock's testimony apparently differs slightly from the police report on this incident—written by Officer Borst—in which it is indicated that the officers ordered the group to stop. (Def.'s Obj. 3 (citing Ex. 7)).

Regardless of the officers' specific words—whether they specifically asked the group to stop or asked to speak with the group—the group did not heed the request. (Rept. and Rec. 3). As the officers exited their vehicle, one member of the group immediately ran away from the officers. (Rept. and Rec. 3). Officer Borst pursued the fleeing individual and eventually apprehended him. (Rept. and Rec. 3). Officer Brock remained with Moede and the two other members of the group who had not fled. (Rept. and Rec. 3). Brock then grabbed Moede by the jacket, told Moede to put his hands in the air, and began to pat Moede down. (Tr. 81:17–82:10).

Moede contends that Officer Brock must have felt a gun at his waistband during that pat-down; however, it was not until moments later (after Moede had been handcuffed and asked to kneel and the other members of his group had also been asked to kneel) that Officer Brock removed a gun from the waistband of Moede's pants. (Def.'s Obj. 3–4; Tr. 81:17–82:10, 82:25–83:7). Officer Brock, on the other hand, recounted that he did not pat down Moede, but instead asked Moede to kneel to prevent him from running. (Tr. 12:23–13:17). According to Officer Brock, when Moede knelt down, the officer heard a "clink" that sounded like a gun hitting the

pavement; that sound prompted Brock to search Mr. Moede and remove a gun that Moede had hidden in his pant leg. (Tr. 12:23–13:17).

Despite this conflicting evidence, the Court concludes that it should trust the testimony of Officer Brock. Any discrepancies between the initial report and Officer Brock's testimony at the evidentiary hearing is likely due to the fact that he did not write the report, and in fact had not seen the report until shortly before the evidentiary hearing. (Tr. 15:10–16:2). Rather, Officer Borst—who was not present for Officer Brock's discovery of the gun—wrote the report, which Officer Brock takes issue with. (Tr. 15:10–16:2). Given that the discrepancy can be adequately explained in that way, and further given Officer Brock's comparatively higher level of credibility when compared to that of Moede (who indicated that he has a history of untruthfulness with law enforcement officers, Tr. 84:22–85:5), the Court accepts Officer Brock's stated version of the events. It thus concludes that Officer Brock requested that Moede kneel, at which time he heard a metallic "clink," was under the impression that Moede may be in possession of a firearm, performed a quick search for such firearm, and subsequently located the firearm that is the subject of this evidentiary dispute.

3. DISCUSSION

That seized gun is now the subject of this evidentiary dispute. Moede—not having committed the armed robbery for which the officers had originally stopped him—was instead charged with being a felon in possession of a firearm. (Docket #1). He requested an evidentiary hearing, and now challenges the magistrate's recommendations following that hearing, seeking to suppress the entry of that firearm into evidence as having been obtained as a result of an unlawful search and seizure. (Docket #10, #20).

Based upon the analysis which follows, the Court finds nothing unlawful about the officers' search and seizure and, therefore, will adopt the magistrate's report and recommendation

In reaching that conclusion, the Court first determines that the defendant was not seized after the officers pulled over to speak with his group, or even after the officers began to exit their car. Law enforcement officers may approach individuals in public to ask those individuals questions—such encounters do not constitute seizures unless "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Gentry v. Sevier*, 597 F.3d 838, 844–85, 846; *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); *United States v. Drayton*, 536 U.S. 194, 200 (2002); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Mr. Moede argues that, because the officers in this case swerved across a lane of traffic to pull in front of his group, asked the males to remove their hoods, and may have asked the individuals to "stop," he was seized by the police. (Def.'s Obj. 3, 5). The Court disagrees. Moede, himself, testified that the officers "asked" him to take down his hood and, while exiting their car, "asked" the group to stop because the officers "wanted to talk" to the group. (Tr. 80:14–80:17; 81:9). Mr. Moede does not recall the officers never engaged their emergency lights. (Tr. 81:5). From these facts, the Court agrees with the magistrate's conclusion that these events did not constitute a seizure; the officers never ordered Moede to stop or to remove his hood, but instead simply indicated that they were interested in "talking" with him and his group. (Tr. 81:9). Such a consensual encounter with a member of the public is not a seizure under the Fourth Amendment. *See United States v. Broomfield*, 417 F.3d 654, 656 (7th Cir. 2005) (officer request for individual to remove hands from pocket is not a seizure).

However, even if the Court were to conclude that the officers' actions *did* constitute a seizure, the Court also agrees with the magistrate that such seizure would be justified by a reasonable suspicion on behalf of the officers that Moede was engaged in criminal activity. So long as an officer has a "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" that officer may stop and briefly detain an individual for investigative purposes. *United States v. Sholola*, 124 F.3d 803, 812 (7th Cir. 1997) (quoting *United States v. Sokolow*, 490 U.S. 1 (1989)); *see also Terry v. Ohio*, 392 U.S. 1 (1968). "Reasonable suspicion" is a lower standard than the "probable cause" requirement to make an arrest, meaning that it can be satisfied by less information that is also potentially less reliable than what is required to satisfy "probable cause." *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *Alabama v. White*, 496 U.S. 325, 330 (1990); *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999); *United States v. Quinn*, 83 F.3d 917, 921 (7th Cir. 1996); *United States v. Tipton*, 3 F.3d 1119, 1122 (7th Cir. 1993). The Court may consider the totality of the circumstances known to the officer at the time of a stop, including the officer's law enforcement experience. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981); *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000); *Quinn*, 83 F.3d at 921; *United States v. Odum*, 72 F.3d 1279, 1284 (7th Cir. 1995).

The officers here had such a "reasonable suspicion." Here, seven minutes after a reported strong-armed robbery, they observed two individuals that appeared very similar to the description of the suspect listed in the CAD report: Moede is Hispanic, and was wearing a hooded sweatshirt, baseball cap, and dark pants—very similar to the CAD description of an Hispanic male wearing a hooded sweatshirt, baseball cap, and dark pants. At the time in question, the officers were a short distance away from the scene

of the crime in a high crime neighborhood. Any facts that may weigh against a reasonable suspicion—Moede points out that he was walking in a group, was not out of breath or nervous when the officers began to question him, and that many individuals in the general area may have worn similar clothing to Moede (Def.'s Obj. 6)—are of limited importance when compared to the objective similarities between Moede and the description in the CAD report as well as the officers' proximity to the scene of the crime. Given those objective factors, the Court concludes that the officers had a reasonable suspicion that would support a seizure in the given circumstances (even though the Court has already concluded that a seizure had not occurred at the time the officers left their car).

Finally, the Court also agrees with Magistrate Goodstein that the officers had a reasonable belief to conduct a quick pat-down of Moede (regardless of when that pat-down occurred), making the officers' seizure of the gun held by Moede a lawful seizure. Under *Terry*, officers may conduct a limited pat down of an individual if the officer has a reasonable belief that the individual is armed and dangerous. *Terry*, 329 U.S. at 24–25, 29–30. Like the "reasonable suspicion" standard, the Court evaluates "reasonable belief" by examining the totality of the circumstances known by an officer at the time. *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). At the time in question, the officers were searching for a suspect in a strong-armed robbery, in a high crime neighborhood; further, one of Moede's group-members had quickly fled from the officers after the officers had simply stepped out of their car. Though the robbery victim did not report having been accosted with a weapon, the officers may well have believed that a violent criminal would carry a weapon to cover contingencies. Further, the fact that Moede's group-member ran away certainly justifies Officer Brock's heightened

concern that Moede may have been involved in the robbery. Given those facts, the Court concludes that Officer Brock had a reasonable belief that Moede may have been armed and dangerous, and thus his pat-down and subsequent seizure of Moede's firearm was not illegal.

4. CONCLUSION

The Court having concluded that Moede was not illegally stopped and seized, and that the pat-down leading to the seizure was also not illegal, the Court is obliged to adopt Magistrate Goodstein's recommendations. As such, the defendant's motion to suppress the firearm must be denied. (Docket #10).

Accordingly,

IT IS ORDERED that the magistrate judge's report and recommendations (Docket #16) be and the same is hereby ADOPTED; and

IT IS FURTHER ORDERED that, consistent with the Court's adoption of the magistrate judge's report and recommendations, the defendant's motion to suppress (Docket #10) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 25th day of May, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge